NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**21-007**

**SARAPHINE GREEN**

**VERSUS**

**BREAUX BRIDGE VENTURES LLC, ET AL.**

\*\*\*\*\*\*\*\*\*\*
ON APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 84908
HONORABLE VINCENT J. BORNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*
**JONATHAN W. PERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

Charles Brandt
Brandt & Sherman Injury Lawyers
111 Mercury Street
Lafayette, Louisiana 70503
(337) 800-4000
**COUNSEL FOR PLAINTIFF-APPELLANT**:
 Saraphine Green

Matthew L. Mann
Porteous, Hainkel & Johnson, L.L.P.
301 St. Charles Street
Baton Rouge, Louisiana 70802
(225)-383-8900
**COUNSEL FOR DEFENDANTS-APPELLEES**:
 Breaux Bridge Ventures LLC, d/b/a
 SILVER'S TRAVEL CENTER AND CASINO and
 HDI GLOBAL INSURANCE COMPANY

**PERRY, Judge.**

This appeal involves a jury verdict rejecting the personal injury claim of a store patron for injuries she received when she slipped and fell on a freshly mopped floor in a convenience store. We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 6, 2016, Saraphine Green ("Green") slipped and fell in the convenience store at Silver's Travel Center and Casino ("Silver's"), a business establishment owned and operated by Breaux Bridge Ventures, LLC ("Breaux Bridge") in Breaux Bridge, Louisiana. Videotape evidence showed that Green slipped on a wet floor that John Davis ("Davis"), a Silver's employee, had just mopped. At the time of the accident, Green was walking through the snack aisle toward the cashier to purchase a lottery ticket. The videotape further showed that Davis had placed a large, yellow cone at either end of the snack aisle to warn customers of the wet condition of the floor. It also showed Davis standing near the cashier with his mop, close to one of the warning cones, and that Green slipped and fell within a few feet of the warning cone.

As a result of her fall, Green alleged that she injured her neck, right shoulder, and back in the accident. Green filed suit against Breaux Bridge and HDI Global Insurance Company ("HDI Global"), Breaux Bridge's commercial general liability insurer. In her petition for damages, Green alleged that the presence of liquid on Silver's convenience store floor exposed her to an unreasonable risk of harm and that Silver's failed to warn her of that risk.

The matter was tried before a jury from March 25-28, 2019. After deliberating, the jury returned a 9–3 verdict finding that the condition of the floor at Silver's did not present a foreseeable and unreasonable risk of harm to Green. Thereafter, the trial court signed a judgment based on the jury verdict in favor of

Breaux Bridge and HDI Global and cast Green with costs in the amount of $26,717.29. This appeal followed.

Green argues three assignments of error: (1) the jury was manifestly erroneous and clearly wrong in finding that the wet and slippery condition of the floor at Silver's did not present a foreseeable and unreasonable risk of harm to her; (2) the jury erred in failing to award any damages to her, requiring this court to review the record and make an award of special and general damages; and (3) should this court reverse the jury verdict, the trial court erred in casting her with costs.

## LAW AND DISCUSSION

The appellate standard of review for jury trials is well established. In *Stobart v. State through Dep't of Transp. & Dev*., 617 So.2d 880, 882–83 (La.1993), the court stated:

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> > 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
> >
> > 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
>
> *See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).
>
> This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. *Id*. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
>
> Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *See generally, Cosse v. Allen–*

2

*Bradley Co.*, 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise*, 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell*, 549 So.2d at 844–45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Housley v. Cerise*, 579 So.2d 973, [976] (La.1991) (*quoting Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990)).

This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." *Canter v. Koehring Co.,* 283 So.2d 716, [724] (La.1973). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

In *Pierite v. DG Louisiana, LLC*, 18-149 (La.App. 3 Cir. 11/7/18), 258 So.3d 901, *writ denied*, 19-127 (La. 3/18/19), 267 So.3d 93, this court recognized that La.R.S. 9:2800.6 governs a merchant's liability for a patron's injuries resulting from a slip and fall. Louisiana Revised Statutes 9:2800.6 states in pertinent part:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

3

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

The failure to prove any of the requirements of La.R.S. 9:2800.6(B) is fatal to the claimant's cause of action. *White v. Wal-Mart Stores, Inc.*, 97-393 (La. 9/9/97), 699 So.2d 1081.

Green contends the jury manifestly erred when it found that the wet floor at Silver's did not present a foreseeable and unreasonable risk of harm to her and points out that the video evidence supports only one conclusion—the wet floor presented an unreasonable risk of harm to her and the risk of harm to her was foreseeable. In two of her arguments, Green contends the placement of the two warning cones, one at each end of the snack aisle, was ineffective, and even if she had seen the warning cones, she did not have sufficient time to react. Green further contends that Davis, the custodian, who was present at Silver's when she entered the snack aisle, had a duty to verbally warn her about the wet floor.

Merchants are required to exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risk of harm, and warn persons of known dangers. *Ward v. ITT Specialty Risk Servs., Inc.*, 31,990 (La.App. 2 Cir. 6/16/99), 739 So.2d 251, *writ denied,* 99-2690 (La. 11/24/99), 750 So.2d 987. The mere presence of a defect does not alone elevate that defect to the level of an unreasonably dangerous condition. *Milton v. E & M Oil Co.*, 45,528 (La.App. 2 Cir. 9/22/10), 47 So.3d 1091.

4

Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons. *Fuller v. Wal-Mart Stores, Inc.*, 577 So.2d 792 (La.App. 2 Cir. 1991); *Ward*, 739 So.2d 251. "A store owner is not liable every time an accident happens." *Hardman v. Kroger, Co.*, 34,250, p. 3 (La.App. 2 Cir. 12/6/00), 775 So.2d 1093, 1095.

Defendants generally have no duty to protect against an open and obvious hazard. *Dowdy v. City of Monroe*, 46,693 (La.App. 2 Cir. 11/2/11), 78 So.3d 791. "If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff." *Caserta v. Wal-Mart Stores, Inc.*, 12-853, p. 1 (La. 6/22/12), 90 So.3d 1042, 1043.

"Jurisprudence has specifically found that mopped floors do not create an unreasonable risk of harm when the appropriate signage is used to warn patrons of the condition of the floor." *Melancon v. Popeye's Famous Fried Chicken*, 10-1109, p. 4 (La.App. 3 Cir. 3/16/11), 59 So.3d 513, 516; *see also Rowell v. Hollywood Casino Shreveport*, 43,306 (La.App. 2 Cir. 9/24/08), 996 So.2d 476; *Lee v. Ryan's Family Steak Houses, Inc.*, 06-1400 (La.App. 1 Cir. 5/4/07), 960 So.2d 1042, *writ denied*, 07-1577 (La. 10/12/07), 965 So.2d 405.

More specifically, where caution signs are set up within a clear line of sight of visitors, a wet floor does not create an unreasonable risk of harm. *See Schroeder v. Hanover Ins., Co.*, 18-294 (La.App. 3 Cir. 9/19/18), 255 So.3d 1123, 1127 (citing *Melancon*, 59 So.3d 513, 516); *Schroeder v. Walgreens Family of Companies*, 14-322, p. 6 (La.App. 4 Cir. 9/24/14), 150 So.3d 926, 929, *rev'd on other grounds*, 14-2238 (La. 1/23/15), 159 So.3d 449 ("when proper signage is used to warn patrons of

5

the floor's condition, a wet floor does not create an unreasonable risk of harm")
(citing *Rowell*, 996 So.2d 479).

Green states in her brief:

> The objective videotape evidence in this case similarly provides this court with the opportunity to see what the jury saw, and convincingly establishes that the jury manifestly erred in concluding that the condition of the snack aisle floor did not present an unreasonable risk of harm to Green. The video vividly illustrates the dangerous nature of the floor in real time and in a dynamic way that cold witness transcripts and still photographs fail to do. It clearly shows Green entering the convenience store, turn into the snack aisle from an opening in the middle of the aisle, and slip barely more than a second later while walking normally. . . .
>
> It is uncontroverted that Davis mopped the floor with clear, untreated water that gave off no odor after. Moreover, the fact that she slipped less than two seconds after entering the snack aisle underscores the magnitude of the danger.

It is true that videotape evidence can provide compelling evidence to reject the jury's contrary conclusion as manifestly erroneous. *See e.g. Stark v. Nat'l Tea Co.*, 94-2633 (La.App. 4 Cir. 5/16/95), 655 So.2d 769, *writ denied*, 95-1801 (La. 11/3/95), 661 So.2d 1380. It is equally true that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. *Mart*, 505 So.2d 1120.

In the present case, the videotape reveals several other evidentiary elements that support the jury verdict and "are reasonable in light of the record reviewed in its entirety[.]" *Sistler*, 558 So.2d at 1112. From the outset, it is shown in the videotape that Davis placed large, yellow warning signs at both ends of the snack aisle. Although Green contends that she did not see the warning signs, the video shows that the two warnings cones were set-up within a clear line of sight of visitors. Other than Green's subjective testimony that she did not see the warning signs, she presented no other evidence that would have refuted that the warning cones were

6

set-up in a clear line of sight. However, in furtherance of her argument, Green additionally puts forth that even if Silver's properly placed the warning cones, she had insufficient time to see and react to the warning. After carefully reviewing the record, we find no evidence supports Green's contention, and she presented no expert testimony to defend her argument. Moreover, the video evidence shows that Green briefly looked in the direction of the warning cone ahead of her and took several steps in the snack aisle toward the warning cone nearest the cash register before she fell.

The videotape further depicts Green successfully walking through the middle aisle and turning into the snack aisle, all the while looking at and carrying on a conversation with Ronald Taylor ("Taylor"), a longtime friend of Green, who was standing one aisle over. Taylor confirmed that he and Green were talking about lottery numbers, that he had successfully walked through the middle aisle, across the recently mopped snack aisle, and that he had seen the warning cone as he passed through the area. Moreover, photographic evidence shown to the jury indicated that the warning cone near the cash register at the end of the snack aisle would have been visible to Green as she entered the snack aisle. Lastly, Green testified that she focused her attention on her conversation with Taylor and not the shelved merchandise in the snack aisle. It is well established that customers are duty-bound to use ordinary care to avoid injury. *See Marrero v. I. Manheim Auctions, Inc.*, 20-878 (La.App. 1 Cir. 2/19/21), 321 So.3d 406; *Primeaux v. Best Western Plus Houma Inn*, 18-841 (La.App. 1 Cir. 2/28/19), 274 So.3d 20; *Jones v. Brookshire Grocery Co.*, 37,117 (La.App. 2 Cir. 5/14/03), 847 So.2d 43. Thus, after carefully reviewing the record, we find a reasonable juror could have concluded that but for Green's inattention, she would have been able to view the wet floor warning sign.

7

Next, without citation to any supporting jurisprudence, Green contends that Davis, a custodian of Silver's, should have verbally warned her of the wet floor. It is well accepted that the standard of reasonableness recognized in the jurisprudence is the benchmark for the evaluation of Silver's practice of using warning signs to alert visitors of the presence of a wet floor. Because Green failed to establish a reason that Silver's utilization of cones as a warning procedure should have been supplemented, we find no merit to her contention.

Finally, Green takes issue with the witness testimony that referred to her gambling and argues that this line of questioning somehow influenced the jury's determination as to liability. To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. *Pitts v. Bailes*, 551 So.2d 1363 (La.App. 3 Cir.)*, writs denied,* 553 So.2d 860 (La.1989) and 556 So.2d 1262 (La.1990). "Requiring a contemporaneous objection gives an opportunity to the trial court to assess the admissibility of the evidence before judgment, and enables this court to expeditiously determine the merits of an appeal." *LaHaye v. Allstate Ins. Co.*, 570 So.2d 460, 466 (La.App. 3 Cir. 1990), *writ denied*, 575 So.2d 391 (La.1991). Our review of the record shows that Green not only failed to object to this line of questioning, but her trial counsel elicited gambling-related testimony from her.

After considering Green's assignments of error, we find no merit to her contention that the jury was manifestly and clearly wrong when it found that the condition of the floor at Silver's did not present a foreseeable and unreasonable risk of harm under the circumstances of this case.

8

Because of our resolution of these threshold issues, we do not address Green's other assignments of error.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court which, in conformity with the verdict of the jury, granted judgment in favor of Breaux Bridge Ventures, LLC and HDI Global Insurance Company, and against Saraphine Green, dismissing all of her claims, with prejudice. Costs of this appeal are assessed to Saraphine Green.

**AFFIRMED**.

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3